**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO**

| | |
|---|---|
| In re:<br><br>SALVADOR J. RULLAN,<br><br>     Debtor. | Case No. 22-11991 KHT<br>Chapter 7 |
| M. STEPHEN PETERS,<br><br>     Plaintiff,<br><br>v.<br><br>ALLIANT CREDIT UNION,<br><br>     Defendant. | Adversary No. 22-01274 KHT |

**ORDER ON TRUSTEE'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

THIS MATTER comes before the Court on the *Trustee's Motion for Partial Summary Judgment* (the "Motion," docket #16), filed by the Plaintiff, Stephen Peters, Chapter 7 Trustee ("Trustee"); the Response thereto (docket #19), filed by the Defendant, Alliant Credit Union ("Alliant"); and the Reply thereto (docket #22), filed by Trustee. The Court has reviewed the pleadings and the file, and is advised in the premises, and hereby concludes as follows:

**I.     BACKGROUND[1]**

    **A.     Vehicle Purchase and Financing.**

On February 12, 2022, Colorado resident Salvador J. Rullan ("Rullan") purchased a 2022 Thor Sanctuary motor home, VIN W1X4EBVY7LT040527 (the "Vehicle"), from General RV Center Inc. Draper ("General RV Center") in Draper, Utah, for $135,896.00. Rullan financed $109,219.63 of the purchase price through General RV Center, signing a Retail Installment Contract and Security Agreement, which was assigned to Alliant that same date.

On that same date and in connection with the purchase, Rullan signed a State of Colorado Power of Attorney for Motor Vehicle Only (the "Power of Attorney"), designating April Lewis of Vitu as his agent with specified powers, including the following: apply for

---

[1] The following facts are undisputed, unless otherwise noted.

and receive a new registration; apply for and receive a certificate of title; transfer ownership and acknowledge odometer reading; and record a lien.

Also on that same date and in connection with the purchase, General RV Center and Rullan executed an "Agreement to Immediately Title RV in Home State and Pay Applicable Sales Tax" (the "Titling Agreement") pursuant to which General RV Center delegated the title application process for the Vehicle to Rullan. The Titling Agreement included the following representation by Rullan: "I understand that if I fail to immediately title my RV in my home state General RV could suffer significant financial losses, including the amount of the outstanding loan balance, plus costs, attorney fees, and interest."

### B. Application for Certificate of Title.

An Application for Colorado Certificate of Title for a Motor Vehicle (the "Title Application") dated June 9, 2022, appears to have been completed and signed by April Lewis as Power of Attorney for Rullan. Because the Vehicle was manufactured in two stages, with a Thor Motor Coach body added to a Mercedes Benz chassis, the Title Application included two Certificates of Origin: one from Thor Motor Coach and one from Mercedes Benz. The Title Application, the Thor Motor Coach Certificate of Origin, and the Mercedes Benz Certificate of Origin all identified Alliant's lien on the Vehicle.

Rullan submitted the Title Application to the Colorado Division of Motor Vehicles Office in Park County, Colorado, on June 14, 2022. A Colorado Certificate of Title (the "Certificate of Title") was issued for the Vehicle on July 14, 2022. The Certificate of Title identifies Alliant's lien on the Vehicle.

### C. Bankruptcy Proceedings.

On June 2, 2022, before the Title Application was submitted, Rullan filed his Chapter 7 bankruptcy petition, listing the Vehicle on his Schedule A/B. Under 11 U.S.C. § 541(a), the Vehicle is an asset of Rullan's bankruptcy estate. Within the 90 days prior to his petition date, Rullan made two payments to Alliant in the aggregate amount of $1,894.28 (the "Payment Transfers").

Trustee filed the instant adversary proceeding, seeking (1) under 11 U.S.C. § 544(a), to avoid Alliant's lien on the Vehicle; and (2) under 11 U.S.C. § 547(b), to avoid and recover payments Rullan made to Alliant during the 90 days prior to the filing of his bankruptcy petition. The Court will discuss each separately below.

## II. DISCUSSION

### A. Summary Judgment Standard.

Under Fed. R. Civ. P. 56(c), incorporated in adversary proceedings by Fed. R. Bankr. P. 7056, "[t]he judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."

A "material" fact is one "that might affect the outcome of the suit under the governing law," and a "genuine" issue is one for which "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In applying this standard, the Court must examine the factual record and reasonable inferences therefrom in the light most favorable to Alliant, the party opposing summary judgment. *See Schwartz v. Bhd. of Maint. of Way Employees*, 264 F.3d 1181, 1183 (10th Cir. 2001).

Trustee bears the burden of proving each element of 11 U.S.C. §§ 544 and 547(b). *See In re Arzate*, 611 B.R. 446, 456 (Bankr. W.D. Okla. 2019 ("well established" that trustee has burden of proof with respect to § 544(a) strong-arm claims); 11 U.S.C. § 547(g).

**B.    11 U.S.C. § 544(a).**

Section 544(a), known as the "strong-arm" provision, provides a trustee the rights of a hypothetical judicial lien creditor, enabling the trustee to set aside unperfected security interests that would be invalid against a creditor who levied under state law as of the date of bankruptcy. To prevail on his § 544(a) claim, Trustee must prove Alliant's lien was unperfected on the date of the bankruptcy filing.

"The determination of whether a creditor's security interest is unperfected, and therefore avoidable under § 544(a), is controlled by state law." *In re Charles*, 323 F.3d 841, 842-–43 (10th Cir. 2003). Here, Colorado law applies. See Colo. Rev. Stat. § 4-9-301(1) (local law of the debtor "governs perfection, the effect of perfection or nonperfection, and the priority of a security interest in collateral"); § 4-9-303(c) ("local law of the jurisdiction under whose certificate of title the goods are covered governs perfection.").

Compliance with the Colorado Certificate of Title Act ("CCTA") is the only method for filing, recording, and perfecting motor vehicle liens. *See Hepner v. Sovereign Bank (In re Roser)*, 613 F.3d 1240, 1245 (10th Cir. 2010); *Codding v. Jackson*, 287 P.2d 976, 979 (Colo. 1955) ("[A]ll the right or interest of any kind in and to an automobile is wrapped up in, and subject to, a strict compliance with the law concerning the certificate of title."). Under the CCTA, to be effective against third parties (including purchasers for value without notice), a lien on a motor vehicle must "be filed for public record" and noted on the owner's certificate of title or bill of sale. Colo. Rev. Stat. § 42-6-120(1).

A lien is perfected on the date on which all required paperwork is received by the applicable county clerk and recorder's office and the required fee is tendered. Colo. Rev. Stat. § 42-6-121(5). Priority is based on the date of filing with the county clerk, except that a purchase-money security interest perfected within 30 days of the date the motor vehicle is delivered to the debtor will have priority over the rights of a lien creditor arising between the attachment of the security interest and the date of its perfection. *See* Colo.

Rev. Stat. §§ 4-9-317(e) and 4-9-324. If a creditor timely complies with Colo. Rev. Stat. §§ 4-9-317(e) and 4-9-324, its perfection is not avoidable under a trustee's strong-arm powers. See 11 U.S.C. § 546(b); *In re Roser*, 613 F.3d at 1244 (creditor's timely compliance with CCTA gave its lien priority over any rights of the trustee as a hypothetical judicial-lien creditor).

Here, Rullan received delivery of the Vehicle on February 12, 2022. Alliant's lien attached, but it was not perfected until the Title Application was submitted to the Colorado Division of Motor Vehicles Office in Park County, Colorado, on June 14, 2022. Because the time period between February 12, 2022, and June 14, 2022, exceeded 30 days, Alliant may not rely on Colo. Rev. Stat. §§ 4-9-317(e) and 4-9-324 or 11 U.S.C. § 546(b).

Alliant argues its lien was recorded on the Certificates of Origin Rullan received when he purchased the Vehicle. But, a lien recorded on a Certificate of Origin is not "filed for public record," and notation on a Certificate of Origin is not sufficient to perfect a lien on a vehicle in Colorado.[2] Alliant's lien was not perfected until the paperwork and the fee were submitted to the Colorado DMV. Alliant's argument fails as a matter of law.[3]

Trustee is entitled to avoid Alliant's lien under the "strong arm" powers of 11 U.S.C. § 544(a). Alliant's lien against the Vehicle is automatically preserved for the benefit of the estate under 11 U.S.C. § 551. Summary judgment is appropriately granted in Trustee's favor as to the First and Second Claims for Relief.

### C. 11 U.S.C. § 547(b).

To prevail on his Fourth Claim for Relief under 11 U.S.C. § 547(b), Trustee must prove the following:

(1) A transfer occurred;
(2) The transfer was a transfer of an interest of the debtor in property;
(3) The transfer was made to or for the benefit of a creditor;
(4) The transfer was made for on account of an antecedent debt owed before the transfer was made;
(5) The transfer was made while the debtor was insolvent;
(6) The transfer was made on or within 90 days of the bankruptcy filing;

---

[2] Even if the Court were to apply the law of one of the other states related to the transaction (Georgia, Indiana, Utah, or Michigan), the result would be the same. Each state requires a certificate of title, *see* Ga. Code Ann. § 40-3-50; Ind. Code Ann. § 9-17-5-5; Utah Code Ann. § 41-1a-601; Mich. Comp. Laws Ann. § 257.217, and Alliant's lien was not recorded on any certificate of title issued by any state prior to Rullan's bankruptcy filing.

[3] Courts in other states requiring certificates of title have similarly held notation on a certificate of origin is insufficient to perfect a lien. *See, e.g., Hillen v. Dennis Dillon Auto Park & Truck Center, Inc. (In re Byrd)*, 546 B.R. 434 (Bankr. D. Idaho 2016); *Guttman v. Assocs. Comm. Corp. (In re Furley's Transport, Inc.)*, 272 B.R. 161 (Bankr. D. Md. 2001); *Pongetti v. Natn'l Bank of Comm. (In re Frady)*, 276 B.R. 456 (Bankr. N.D. Miss. 2000); *Euromotorsport Racing, Inc. v. Ferrari Financial Services, Inc. (In re Euromotorsport Racing, Inc.)*, Adv. No. 95–326, 1996 WL 33406078 (Bankr. S.D. Ind. Feb. 13, 1996); *Westenhoefer v. Navistar Financial Corp. (In re Daulton)*, 155 B.R. 7 (Bankr. E.D. Ky. 1993).

and,

(7) The transfer enabled the creditor to receive more than the creditor would receive in a hypothetical chapter 7 liquidation and the transfer had not been made.

Here, Trustee proved each element. It is undisputed the Payment Transfers occurred. Alliant does not dispute the Payment Transfers were Rullan's property, made to and for the benefit of Alliant, on account of an antecedent debt owed to Alliant before the transfers were made, while Rullan was insolvent, within 90 days of Rullan's bankruptcy filing. Alliant disputes the last element, arguing it was a secured creditor. But, as discussed above, Alliant's lien was not perfected on the date Rullan filed his bankruptcy petition. The Court concludes, as a matter of law, the Payment Transfers enabled Alliant to receive more than it would have in a hypothetical chapter 7 liquidation, had the Payment Transfers had not been made.

Trustee is entitled to avoid the Payment Transfers under 11 U.S.C. § 547(b) and recover the Payment Transfers or the value thereof from Alliant under 11 U.S.C. § 550(a). Summary judgment is appropriately granted in Trustee's favor as to the Fourth Claim for Relief.

### III. CONCLUSION

For the reasons discussed above, the Motion will be granted. Trustee is entitled to summary judgment on his First, Second, and Fourth Claims for Relief. A separate judgment shall enter.

IT IS SO ORDERED.

Dated March 19, 2024

BY THE COURT:

*Kimberley H Ty*
Kimberley H. Tyson
United States Bankruptcy Judge